**IN THE CIRCUIT COURT
FOR BALTIMORE CITY, MARYLAND**

THE ESTATE OF TRINA L. CUNNINGHAM  :
Personal Representative  :
Towanda Grant-Cunningham  :
C/O  :
200 E. Lexington Street, 1111  :
Baltimore, MD 21202  :
  :
    and  :
  :
TOWANDA GRANT-CUNNINGHAM  :
C/O  :
200 E. Lexington Street, 1111  :
Baltimore, MD 21202  :
  :
    and  :
  :
FAITH CUNNINGHAM  :
C/O  :
200 E. Lexington Street, 1111  :
Baltimore, MD 21202  :
  :
    and  :
  :
BROCK BIRDEN  :
C/O  :
200 E. Lexington Street, 1111  :
Baltimore, MD 21202  :
  :
             Plaintiffs,  :
  :
v.  :    Case No.:
  :
MAYOR AND CITY COUNCIL of  :
BALTIMORE  :
City Hall – Room 250  :
100 N. Holliday Street  :
Baltimore, Maryland 21202  :
  :
and  :
  :
BALTIMORE CITY  :
DEPARTMENT OF PUBLIC WORKS  :
200 Holliday Street  :

Unit 600
Baltimore, Maryland 21202          :
                                   :
and                                :
                                   :
RUDY CHOW                          :
DIRECTOR                           :
DEPARTMENT OF PUBLIC WORKS         :
Individually and in official       :
Capacity                           :
200 Holliday Street                :
Unit 600                           :
Baltimore, Maryland 21202          :
                                   :
and                                :
                                   :
JASON W. MITCHELL                  :
DIRECTOR                           :
BALTIMORE CITY DEPARTMENT          :
OF PUBLIC WORKS                    :
Individually and in official       :
Capacity                           :
200 Holliday Street                :
Unit 600                           :
Baltimore, Maryland 21202          :
                                   :
and                                :
                                   :
MICHAEL HALLMEN                    :
BALTIMORE CITY DEPARTMENT          :
OF PUBLIC WORKS                    :
HEAD OF WASTEWATER FACILITIES      :
DIVISION                           :
Individually and in official       :
Capacity                           :
200 Holliday Street                :
Unit 600                           :
Baltimore, Maryland 21202          :
                                   :
and                                :
                                   :
YOSEF KEBEDE                       :
BUREAU HEAD                        :
BALTIMORE CITY DEPARTMENT          :
OF PUBLIC WORKS                    :
Individually and in official       :
Capacity                           :

2

```
200 Holliday Street          :
Unit 600                     :
Baltimore, Maryland 21202    :
                             :
and                          :
                             :
MICHAEL GALLAGHER            :
DIVISION CHIEF WASTEWATER    :
BALTIMORE CITY DEPARTMENT    :
OF PUBLIC WORKS              :
FACILITIES,                  :
DEPART OF PUBLIC WORKS       :
Individually and in official :
Capacity                     :
200 Holliday Street          :
Unit 600                     :
Baltimore, Maryland 21202    :
                             :
and                          :
                             :
                             :
NEAL JACKSON                 :
SUPERVISOR                   :
BALTIMORE CITY DEPARTMENT    :
OF PUBLIC WORKS              :
PATAPSCO WASTEWATER TREATMENT PLANT:
Individually and in official :
Capacity                     :
3501 Asiatic Avenue          :
Baltimore, Maryland 21226    :
                             :
and                          :
                             :
CHARLES JOHNSON              :
BALTIMORE CITY DEPARTMENT    :
OF PUBLIC WORKS              :
PRIMARY AREA SUPERVISOR      :
PATAPSCO WASTEWATER TREATMENT PLANT:
Individually and in official :
Capacity                     :
3501 Asiatic Avenue          :
Baltimore, Maryland 21226    :
                             :
and                          :
                             :
CHARLES McFADDEN             :
BALTIMORE CITY DEPARTMENT    :
```

3

```
OF PUBLIC WORKS                        :
PLANT OPERATIONS SUPERVISOR            :
PATAPSCO WASTEWATER TREATMENT PLANT:
Individually and in official           :
Capacity                               :
3501 Asiatic Avenue                    :
Baltimore, Maryland 21226              :
                                       :
and                                    :
                                       :
LARRY FISCHER                          :
OPERATION MANAGER                      :
BALTIMORE CITY DEPARTMENT              :
OF PUBLIC WORKS                        :
PATAPSCO WASTEWATER TREATMENT PLANT:
Individually and in official           :
Capacity                               :
3501 Asiatic Avenue                    :
Baltimore, Maryland 21226              :
                                       :
and                                    :
                                       :
DAVID LAWLER                           :
MAINTENANCE MANAGER                    :
BALTIMORE CITY DEPARTMENT              :
OF PUBLIC WORKS                        :
PATAPSCO WASTEWATER TREATMENT PLANT:
Individually and in official           :
Capacity                               :
3501 Asiatic Avenue                    :
Baltimore, Maryland 21226              :
                                       :
and                                    :
                                       :
FOLEY MATERIAL HANDLING CO. Inc.       :
11327 Virginia Crane Dr.               :
Ashland, VA 23005                      :
                                       :
Serve:                                 :
Dale R. Foley                          :
1 Virginia Crane Drive                 :
P.O. Box 289                           :
Ashland, VA 23005                      :
                                       :
and                                    :
                                       :
VIRGINIA CRANE                         :
```

4

```
11327 Virginia Crane Dr.          :
Ashland, VA 23005                 :
                                  :
Serve:                            :
Dale R. Foley                     :
1 Virginia Crane Drive            :
P.O. Box 289                      :
Ashland, VA 23005                 :
                                  :
and                               :
                                  :
FREELAND HOIST & CRANE, INC.      :
1600 S. Caton Avenue              :
Baltimore, MD 21227               :
                                  :
Serve:                            :
William P. Geary                  :
1600 S. Caton Avenue              :
Baltimore, MD 21227               :
                                  :
and                               :
                                  :
GRATING FASTENERS, LLC            :
2332 Pailet Avenue                :
Harvey, LA 70058                  :
                                  :
Serve:                            :
Roger Toups                       :
1131 Lafayette Street             :
Gretna, LA 70053                  :
                                  :
and                               :
                                  :
DEMAG CRANES & COMPONENTS, CORP.  :
6675 Parkland Blvd. #200          :
Solon, OH 44139                   :
                                  :
Serve:                            :
National Registered Agents, Inc.  :
4400 Easton Commons Way           :
Suite 125                         :
Columbus, OH 43219                :
                                  :
and                               :
                                  :
PRODUCTION FASTENING SYSTEMS, LLC :
435 Calhoun Street                :
```

5

```
New Orleans, LA 70118                          :
                                               :
Serve:                                         :
Gerald Keller                                  :
417 Calhoun Street                             :
New Orleans, LA 70118                          :
                                               :
and                                            :
                                               :
CRANE 1 SERVICES, INC.                         :
550 Conover Drive                              :
Franklin, OH 45005                             :
                                               :
Serve:                                         :
The Corporation Trust, Inc.                    :
2405 York Road                                 :
Suite 201                                      :
Lutherville-Timonium, MD 21093                 :
                                               :
and                                            :
                                               :
GANNETT FLEMING, INC.                          :
300 E. Lombard Street                          :
Suite 840                                      :
Baltimore, MD 21202                            :
                                               :
Serve:                                         :
CSC-Lawyers Incorporating Srvc Co.             :
7 St. Paul Street                              :
Suite 820                                      :
Baltimore, MD 21202                            :
                                               :
and                                            :
                                               :
OVERHEAD CRANE SERVICE, INC.                   :
1314 E Phila Avenue                            :
Gilbertsville, PA 19525                        :
                                               :
Serve:                                         :
James F. Knisley                               :
President                                      :
783 Lee Road                                   :
Perkiomenville, PA 18074                       :
                                               :
and                                            :
                                               :
POOLE & KENT CORPORATION                       :
```

6

```
4530 Hollins Ferry Road          :
Baltimore, MD 21227              :
                                 :
Serve:                           :
CSC-Lawyers Incorporating Srvc Co. :
7 St. Paul Street                :
Suite 820                        :
Baltimore, MD 21202              :
                                 :
and                              :
                                 :
PEINER USA, INC.                 :
SMAG                             :
5 Dellinger Lane                 :
Bluffton, SC 29909               :
                                 :
Serve:                           :
Charles H. Wiseman               :
1040 William Hilton Pkwy         :
Suite 200                        :
Hilton Head Island, SC 29928     :
                                 :
and                              :
                                 :
SEW-EURODRIVE, INC.              :
300 E Lombard Street             :
Baltimore, MD 21202              :
                                 :
Serve:                           :
National Registered Agents, Inc. :
2405 York Road                   :
Suite 201                        :
Lutherville-Timonium, MD 21093   :
                                 :
and                              :
                                 :
COLUMBUS MCKINNON CORP.          :
205 Crosspoint Parkway           :
Getzville, NY 14068              :
                                 :
Serve:                           :
C/O Corporation Service Company  :
80 State Street                  :
Albany, NY 12207                 :
                                 :
and                              :
                                 :
```

7

MAGNETEK, INC.                         :
205 Crosspoint Parkway                 :
Getzville, NY 14068                    :
                                       :
Serve:                                 :
C/O Corporation Service Company        :
80 State Street                        :
Albany, NY 12207                       :
                                       :
and                                    :
                                       :
ELECTROMOTIVE SYSTEMS, INC.            :
205 Crosspoint Parkway                 :
Getzville, NY 14068                    :
                                       :
Serve:                                 :
C/O Corporation Service Company        :
80 State Street                        :
Albany, NY 12207                       :
                                       :
and                                    :
                                       :
AERO-MOTIVE MANUFACTURING CO.          :
28175 Haggerty Road                    :
Novi, MI 48377                         :
                                       :
Serve:                                 :
United Agent Group, Inc.               :
28175 Haggerty Road                    :
Novi, MI 48377                         :
                                       :
and                                    :
                                       :
R&M MATERIALS HANDLING, INC.           :
4501 Gateway Blvd                      :
Springfield, OH 45502                  :
                                       :
Serve:                                 :
National Registered Agents, Inc.       :
4400 Easton Commons Way                :
Suite 125                              :
Columbus, OH 43219                     :
                                       :
and                                    :
                                       :
OHIO GRATING, INC.                     :
5299 Southway St SW                    :

8

```
Canton, OH 44706                    :
                                    :
Serve:                              :
Thomas W. Winkhart                  :
825 South Main Street               :
North Canton, OH 44720              :
                                    :
and                                 :
                                    :
SEIVERT ELECTRIC SERVICE            :
AND SALES COMPANY                   :
BUDGIT HOIST                        :
1230 S. Hannah Street               :
Forest Park, IL 60130               :
                                    :
Serve:                              :
Kimberly S. Coogan                  :
915 Harger Road                     :
Suite 240                           :
Oak Brook, IL 60523                 :
                                    :
and                                 :
                                    :
GORBEL, Inc.                        :
600 Fishers Run                     :
6th Floor                           :
Victor, NY 14564                    :
                                    :
Serve:                              :
Brian D. Reh                        :
600 Fishers Run                     :
PO Box 593                          :
Fishers, NY 14453                   :
                                    :
            Defendants.             :
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

TOWANDA GRANT-CUNNINGHAM, as wife and personal

representative of the ESTATE OF TRINA L. CUNNINGHAM, BROCK

BIRDEN, son of Trina L. Cunningham, and FAITH CUNNINGHAM, mother

of Trina L. Cunningham, by and through their attorneys, ROLAND

9

D. BROOKS, Esq. and RANDY EVAN MCDONALD, Esq., bring this action against the defendants:

## I. JURISDICTION, VENUE and PRE-SUIT REQUIREMENTS

1. This Court has personal jurisdiction over the Defendants pursuant to Maryland Code, Courts & Judicial Proceedings, § 6-103, because the cause of action arose in Baltimore, Maryland.

2. This Court has subject matter jurisdiction over the Defendants pursuant to Maryland Code, Courts & Judicial Proceedings, § 1-501, and pursuant to Maryland Code, Courts & Judicial Proceedings, § 4-401 because the amount in controversy is greater than thirty-thousand dollars ($30,000.00).

3. Venue lies with this Court pursuant to Maryland Code, Courts & Judicial Proceedings, § 6-201.

4.    Plaintiffs placed Defendant, Mayor and City Council of Baltimore on notice of this claim as required by the Local Government Tort Claims Act (Maryland Code, Courts & Judicial Proceedings, §§ 5-304) by delivering the required notice within one year of Trina L. Cunningham's death.

## II. PARTIES

5. The Plaintiff, THE ESTATE OF TRINA L. CUNNINGHAM ("Plaintiff") is established in Baltimore City, MD.

10

6. TOWANDA GRANT-CUNNINGHAM, plaintiff, is the surviving widow of TRINA L. CUNNINGHAM and personal representative of THE ESTATE OF TRINA L. CUNNINGHAM.

7. BROCK BIRDEN, plaintiff, is the surviving son of Trina L. Cunningham.

8. FAITH CUNNINGHAM, Plaintiff, is the surviving mother of Trina L. Cunningham.

9. Defendant, the MAYOR and CITY COUNCIL OF BALTIMORE ("the City") is a municipal corporation, duly organized and existing by virtue of the laws of the State of Maryland, and was in control of and operated the Baltimore City Department of Public Works ("DPW"). The City was responsible for and had the duty to provide a safe working environment that was free from danger and to protect all persons employed at DPW. It was also the employer or hired all other defendants who are sued in the instant action. All other defendants were acting within the scope of their employment and under color of law.

10. Defendant, BALTIMORE CITY DEPARTMENT OF PUBLIC WORKS ("DPW"), was in control of the Patapsco Wastewater Treatment Plant ("PWWTP").

11. The defendant, Rudy Chow, who is sued in his individual and official capacities, is now, or was at all relevant times, Director of DPW, and was acting under color of law in his capacity as Director of DPW and employed by the City

11

when he failed to maintain a safe environment, free from danger, and instructed employees to work inside the hazardous, precarious, and deleterious environment at the PWWTP. At all times relevant, Mr. Mitchell was operating within the scope of his employment.

12. The defendant, JASON MITCHELL, who is sued in his individual and official capacities, is now, or was at all relevant times, Director of DPW, and was acting under color of law in his capacity as Director of DPW and employed by the City when he failed to maintain a safe environment, free from danger, and instructed employees to work inside the hazardous, precarious, and deleterious environment at the PWWTP. At all times relevant, Mr. Mitchell was operating within the scope of his employment.

13. The defendant, MICHAEL HALLMEN, who is sued in his individual and official capacities, is now, or was at all relevant times, Head of Wastewater Facilities Division at DPW, was acting under color of law in his capacity as Head of Wastewater Facilities Division, and employed by the City when he failed to maintain a safe environment, free from danger, and instructed employees to work inside the hazardous, precarious and deleterious environment at the PWWTP. At all times relevant, Mr. Hallmen was operating within the scope of his employment.

12

14.     The defendant, YOSEF KEBEDE, who is sued in his individual and official capacities, is now, or was at all relevant times, Bureau Head at DPW - Bureau of Water and Wastewater, and was acting under color of law in his capacity as a bureau head employed by the City when he failed to maintain a safe environment, free from danger, and instructed employees to work inside the hazardous, precarious and deleterious environment at the PWWTP.  At all times relevant, Mr. Kebede was operating within the scope of his employment.

15.     The defendant, MICHAEL GALLAGHER, who is sued in his individual and official capacities, is now, or was at all relevant times, Division Chief, Wastewater Facilities Division at DPW - Bureau of Water and Wastewater, and was acting under color of law in his capacity as a division chief employed by the City and DPW when he failed to maintain a safe environment, free from danger, and instructed employees to work inside the hazardous, precarious and deleterious environment at the PWWTP. At all times relevant, Mr. Gallagher was operating within the scope of his employment.

16.     The defendant, NEAL JACKSON, who is sued in his individual and official capacities, is now, or was at all relevant times, Supervisor at PWWTP, and was acting under color of law in his capacity as Supervisor and was employed by the City when he failed to maintain a safe environment, free from,

13

danger and instructed employees to work inside the hazardous, precarious and deleterious environment at the PWWTP. At all times relevant, Mr. Jackson was operating within the scope of his employment.

17. The defendant, CHARLES JOHNSON, who is sued in his individual and official capacities, is now, or was at all relevant times, Primary Area Supervisor at PWWTP, and was acting under color of law in his capacity as Primary Area Supervisor and was employed by the City when he failed to maintain a safe environment, free from danger, and instructed employees to work inside the hazardous, precarious and deleterious environment at the PWWTP. At all times relevant, Mr. Johnson was operating within the scope of his employment.

18. The defendant, CHARLES MCFADDEN, who is sued in his individual and official capacities, is now, or was at all relevant times, Plant Operations Supervisor at PWWTP, and was acting under color of law in his capacity as Plant Operations Supervisor employed by the City when he failed to maintain a safe environment, free from danger, and instructed employees to work inside the hazardous, precarious and deleterious environment at the PWWTP. At all times relevant, Mr. McFadden was operating within the scope of his employment.

19. The defendant, LARRY FISCHER, who is sued in his individual and official capacities, is now, or was at all

14

relevant times, Operations Manager at PWWTP, and was acting under color of law in his capacity as Operations Manager and was employed by the City when he failed to maintain a safe environment, free from danger, and instructed employees to work inside the hazardous, precarious and deleterious environment at the PWWTP. At all times relevant, Mr. Fischer was operating within the scope of his employment.

20.     The defendant, DAVID LAWLER, who is sued in his individual and official capacities, is now, or was at all relevant times, Maintenance Manager at PWWTP, and was acting under color of law in his capacity as Maintenance Manager and was employed by the City when he failed to maintain a safe environment, free from danger, and instructed employees to work inside the hazardous, precarious and deleterious environment at the PWWTP. At all times relevant, Mr. Lawler was operating within the scope of his employment.

21.     Defendant FOLEY MATERIAL HANDLING, INC. is a Virginia corporation with its principal place of business in Ashland, VA, and sold the crane system used inside of the Grit Facility.

22.     Defendant VIRGINIA CRANE is a Virginia corporation with its principal place of business in Ashland, VA, and sold the crane system used inside of the Grit Facility.

15

23. Defendant DEMAG CRANES & COMPONENTS, CORP., is an Ohio corporation with its principal place of business in Solon, OH, and among other things did create the braking system for the crane which failed to work properly.

24. Defendant POOLE & KENT CORP. is a Maryland corporation with its principal place of business in Baltimore, MD, and was the mechanical contractor that purchased many of the products that comprised the crane system.

25. Defendant PEINER USA, Inc., AKA SMAG, is a South Carolina corporation with its principal place of business in Bluffton, SC, and made the clamshell buckets.

26. Defendant SEW-EURODRIVE, Inc., is a Maryland corporation with its principal place of business in Baltimore, MD, which manufactured the motors for the cranes inside the Grit Facility.

27. Defendant COLUMBUS MCKINNON is a Delaware corporation with its principal place of business in Getzville, NY, which manufactured the controls for the motors in the overhead cranes.

28. Defendant MAGNETEK, INC., is a Delaware corporation with its principal place of business in Getzville, NY, which manufactured the controls for the motors in the overhead cranes.

16

29.     Defendant ELECTROMOTIVE SYSTEMS is a Delaware corporation with its principal place of business in Getzville, NY, which manufactured the controls for the motors in the overhead cranes.

30.     Defendant AERO-MOTIVE MANUFACTURING CO. is a Michigan corporation with its principal place of business in Novi, MI, which manufactured cables and reels in the crane system.

31.     Defendant R&M MATERIALS HANDLING, INC. is a Delaware corporation with its principal place of business in Springfield, OH, that manufactured the overhead crane system.

32.     Defendant SIEVERT ELECTRIC SERVICE AND SALES COMPANY is an Illinois corporation with its principal place of business in Forest Park, IL, which manufactured the hoist inside the Grit Facility.

33.     Defendant BUDGIT HOIST, is an Illinois corporation with its principal place of business in Forest Park, IL, which manufactured the hoist inside the Grit Facility.

34.     Defendant GORBEL, Inc., is a New York corporation with its principal place of business in Victor, NY, which manufactured the I-beam for the crane system.

35.     Defendant OHIO GRATINGS, INC., is an Ohio corporation with its principal place of business in Canton, OH,

17

and made the grates, plank clips, grating clamps and/or other anchoring devices for the grates.

36. Defendant GRATING FASTENERS, LLC, is a Louisiana company with its principal place of business in Gretna, LA, which manufactured and/or designed the "G-Clips" that were defectively manufactured and/or designed to secure the grate to the I-beam in the Grit Facility.

37. Defendant PRODUCTION FASTENING SYSTEMS, LLC, is a Louisiana company with its principal place of business in New Orleans, LA, which manufactured and/or designed the "G-Clips" that were defectively manufactured and/or designed to secure the grate to the I-beam in the Grit Facility.

38. Defendant GANNETT FLEMING, Inc., is a Delaware corporation with its principal place of business in Baltimore, MD, and assisted in the design and inspection of the grates.

39. Defendant OVERHEAD CRANE SERVICE, Inc., is a Pennsylvania corporation with its principal place of business in Boyertown, PA, and passed the crane system as safe.

40. Defendant CRANE 1 SERVICES, Inc., is a Delaware corporation with its principal place of business in Franklin, OH, and among other things did certify the crane system as safe.

41. Defendant FREELAND HOIST & CRANE, INC. is a Maryland corporation with its principal place of business in

18

Baltimore, MD, which was contracted to inspect and maintain the crane and hoist inside the Grit Facility.

42.    Defendants named in paragraphs 9-20 shall hereinafter be collectively known as the "City Defendants".

43.    Defendants named in paragraphs 11-20 shall hereinafter be collectively known as the "City Employees".

44.    Defendants named in paragraphs 21-34 shall hereinafter be collectively known as the "Crane Defendants".

45.    Defendants named in paragraphs 35-38 shall hereinafter be collectively known as the "Grate Defendants".

46.    All defendants are jointly and severally liable for damages and injuries to plaintiff.

### III.    STATEMENT OF FACTS

47.    On June 3, 2019, Trina L. Cunningham was as an employee of the City for the DPW at the PWWTP. Trina L. Cunningham's title at DPW was Supervisor.

48.    As a Supervisor, Trina L. Cunningham was assigned the responsibility of assuring that the water flowing into and out of the PWWTP did so safely, properly, and without interruption.

49.    On this date, Trina L. Cunningham was working at PWWTP and assigned to the deathtrap otherwise known as The Grit Facility, which was the specific site of her fatal incident.

19

50.     The Grit Facility is a 24,099 square foot, multi-story brick building that separates the wastewater debris from the effluent waste stream, ending in the solids reclamation area at the PWWTP.

51.     The wastewater enters the facility and travels through six grated chambers where debris is deposited before solid waste travels over the outfall through the 1000-foot long, 96-inch diameter pipe to the final reclamation area. (This is the path Trina L. Cunningham's body travelled to her death)

52.     There are a total of six catwalks with one catwalk above each wastewater aerated grit chamber.  The catwalks are on an elevated working platform.

53.     Employees, including Trina L. Cunningham, were assigned to work in The Grit Facility to remove debris from the grit chambers by operating a remote controlled, 10-ton, overhead crane.

54.     While working in The Grit Facility, and through no fault of her own, Trina L. Cunningham fell through a negligently designed, manufactured, installed and maintained catwalk system as a result of the negligently designed, manufactured, installed and maintained catwalk system's failure to maintain structural integrity.

55.    There were no safeguards to prevent Trina L. Cunningham from falling through the negligently designed, manufactured, installed and maintained catwalk system.

56.    If any safeguards did exist to prevent such a fall, Trina L. Cunningham was intentionally, or negligently, never trained as to the safeguards to prevent such falls.

57.    No action by Trina L. Cunningham contributed to the negligently designed, manufactured, installed and, maintained catwalk system's failure to maintain structural integrity.

58.    As a result of the negligently designed, manufactured, installed and maintained catwalk system's failure to maintain structural integrity Trina L. Cunningham fell into a wastewater aerated grit chamber.

59.    The result of the failure to maintain structural integrity was Trina L. Cunningham drowning in a wastewater aerated grit chamber and being carried over one thousand feet, where her body was ultimately recovered in the solids reclamation area after traveling the length of the underground effluent waste pipe.

60.    By the time Trina L. Cunningham's body was found she had suffered a broken wrist and multiple lacerations, as she ostensibly fought to survive.  She died from drowning in an 18-foot-deep chamber of wastewater, feces and urine at the PWWTP.

21

61.     Trina L. Cunningham fell into the effluent outfall of Aerated Grit Chamber #6 when two catwalk grates, measuring approximately forty-seven and one-half inches wide and 36 inches long, beneath her became dislodged from the structure I-beam resulting in a failure to maintain structural integrity.

62.     Trina L. Cunningham and the two catwalk grates plummeted into the cascading effluent waste outfall where she died from drowning in the wastewater.

63.     Her death was due to the compounded intentional decisions, negligence, incompetence, and failures of these defendants.

64.     Once Trina L. Cunningham fell into the aerated chamber, because of the failure to maintain structural integrity, because the catwalk system was negligently designed, installed, and maintained, there was no means for Trina L. Cunningham to free herself or be rescued.

65.     As designed, the grates were supported by structural I-beams.

66.     The structural I-beam where the two grates had been dislodged was damaged and bent, from being hit by the 7.5-ton clamshell attachment connected to the overhead crane that employees operated to remove grit and debris.

67.     The grates that remained on the I-beam, which did not fall into the effluent outfall, were not resting flush on

22

the I-beam and were observed to be missing clip attachments that secured the grates to the structure.

68.    The four corners of the elevated working platform above the chambers in the Grit Facility had access ladders that were permanent means of access and egress to this level along with a staircase at each end of the platforms.   The platform was ten feet above the concrete surface below.

69.    On June 3, 2019, Trina L. Cunningham and two Grounds Maintenance workers proceeded to the Grit Facility where they were to remove grit from one of the six chambers using one or both overhead cranes with clamshell bucket attachments, as they were required to do as part of their employment.

70.    The Grit Facility is not regularly manned.

71.    These cranes were not approved for use in hazardous locations such as The Grit Facility.

72.    The only reason for Trina L. Cunningham to be in the Grit Facility is to complete the tasks assigned to her as part of her employment.

73.    The employees utilize one or two 10-ton overhead cranes with a clamshell bucket attachment on each crane to remove the grit. Then it is placed in a sitting dump truck at ground level.

74.    When entering the facility by the entrances on both ends of the building the employees walk across the metal

23

grating that runs down the center of the chambers and runs between the tanks, and at the ends of the chambers.

75.     The water below the grates is waste and storm water, and the chambers are eighteen feet deep.

76.     Each grate was installed with 4 clips per grate.

77.     Most of the grates measured 3 feet by 4 feet.

78.     There are 6 rows of grating with 6 grates in each row.

79.     The clips are used to keep the grates down and secured to the I-Beam beneath the grates.

80.     There were numerous clips that were in place that were loose and could not be torqued to the proper pressure because they were corroded.

81.     With the clips improperly maintained, the grates were subject to being dislodged.

82.     Because of the improper clip maintenance, the grates shifted and collapsed when Trina L. Cunningham stepped on them, causing her to fall eighteen feet into the wastewater.

83.     The Grit Facility was closed after June 3, 2019, while Trina L. Cunningham's death was being investigated.

84.     On July 23, 2019, when the facility was measured for toxic gases, elevated levels of hydrogen sulfide were found.

85.     The Grit Facility was in an extremely hazardous, deleterious and precarious condition and there were multiple

24

failures and violations of occupational safety and health
standards.

      86.    The grates inside the Grit Facility should have
been properly affixed to the structure by metal clips.

      87.    There was a total of thirty-six grates inside the
Grit Facility.  There were thirty-four grates remaining after
Trina L. Cunningham fell into the chamber.

      88.    There were 136 metal clips needed to secure the
remaining thirty-four grates.  Of the necessary 136 metal clips
86 were missing or loose.

      89.    The City, and DPW specifically, failed to inspect
and maintain walking-working surfaces at Grit Chamber 6.

      **90.** The four-foot-wide catwalk above Grit Chamber 6,
consisting of 6 adjacent grates, was found to have 9 missing
clips and 9 loose clips.

      **91.** The catwalk above Grit Chamber 6 is the catwalk that
Trina L. Cunningham fell through to her death.

      92.    The City, and DPW specifically, failed to inspect
and maintain walking-working surfaces at Grit Chamber 5.

      93.    The four-foot-wide catwalk above Grit Chamber 5,
consisting of six adjacent grates, was found to have six loose
and ten missing clips.

      94.    The City, and DPW specifically, failed to inspect
and maintain walking-working surfaces at Grit Chamber 4.

95.     The four-foot-wide catwalk above Grit Chamber 4, consisting of six adjacent grates, was found to have nine loose and twelve missing clips.

96.     The City, and DPW specifically, failed to inspect and maintain walking-working surfaces at Grit Chamber 3.

97.     The four-foot-wide catwalk above Grit Chamber 3, consisting of six adjacent grates, was found to have four loose and four missing clips.

98.     The City, and DPW specifically, failed to inspect and maintain walking-working surfaces at Grit Chamber 2.

99.     The four-foot-wide catwalk above Grit Chamber 2, consisting of six adjacent grates, was found to have six loose and eleven missing clips.

100.    The City, and DPW specifically, failed to inspect and maintain walking-working surfaces at Grit Chamber 1.

101.    The four-foot-wide catwalk above Grit Chamber 1, consisting of six adjacent grates, was found to have fifteen loose and 2 missing clips.

102.    Maryland Occupational Safety and Health ("MOSH") found the missing and loose clips to be a serious violation of federal and state regulations governing workplace safety, specifically 29 CFR 1910.22(d)(1).

103.    The City, and DPW specifically, failed to correct or repair damaged walking surfaces above Grit Chamber 6 for at

26

least a year prior to Trina L. Cunningham's death. MOSH found that this failure led to Trina L. Cunningham falling through the metal grating and into the grit chamber outfall.

104. The City, and DPW specifically, failed to correct or repair damaged walking surfaces above Grit Chamber 5 for at least a year prior to Trina L. Cunningham's death.

105. The City, and DPW specifically, failed to correct or repair damaged walking surfaces above Grit Chamber 4 for at least a year prior to Trina L. Cunningham's death.

106. The City, and DPW specifically, failed to correct or repair damaged walking surfaces above Grit Chamber 3 for at least a year prior to Trina L. Cunningham's death.

107. The City, and DPW specifically, failed to correct or repair damaged walking surf The City, and DPW specifically, aces above Grit Chamber 2 for at least a year prior to Trina L. Cunningham's death.

108. The City, and DPW specifically, failed to correct or repair damaged walking surfaces above Grit Chamber 1 for at least a year prior to Trina L. Cunningham's death.

109. The City, and DPW specifically, failed to correct or repair a damaged I-beam supporting the walking-working surface that encompassed the center grated walkway.

110. MOSH found the failure to correct or repair the damaged walking surfaces above Grit Chambers 1-6 to be a serious

27

violation of federal and state regulations governing workplace safety, specifically 29 CFR 1910.22(d)(2).

111. The City, and DPW specifically, failed to ensure that each employee, on a walking working surface with an unprotected side or edge that is four feet or more above a lower level, was protected from falling by a standard guardrail system.

112. The City, and DPW specifically, failed to inspect the overhead crane blocks with hooks on a monthly basis.

113. MOSH found the failure to inspect the overhead crane blocks to be a serious violation of federal and state regulations governing workplace safety, specifically 29 CFR 1910.179(j)(2)(iii).

114. The City, and DPW specifically, failed to inspect the cranes in the Grit Facility.

115. MOSH found the failure to inspect the cranes in the Grit Facility to be a serious violation of federal and state regulations governing workplace safety, specifically 29 CFR 1910.179(j)(3).

116. In total, MOSH cited the City, and DPW, with twenty-eight violations of federal and state regulations, twenty-four of those violations were deemed to be "serious" violations and four of those violations were deemed to be "other than serious".

28

117.    The City, and DPW specifically, failed to establish a preventative maintenance program for the two overhead cranes in the Grit Facility.

118.    MOSH found the failure to establish a preventative maintenance program for the two overhead cranes to be a serious violation of federal and state regulations governing workplace safety, specifically 29 CFR 1910.179(l)(1).

119.    The City, and DPW specifically, failed to inspect all ropes and to certify that those ropes had been inspected on a monthly basis.

120.    MOSH found the failure to inspect ropes and to certify them as inspected to be a serious violation of federal and state regulations governing workplace safety, specifically 29 CFR 1910.179(m)(1).

121.    The City, and DPW specifically, left 120-volt receptacles in the Grit Facility exposed to contact by employees and exposed to hydrogen sulfide, a highly flammable and extremely toxic gas.

122.    MOSH found that the failure to keep electrical equipment free from known hazards to be a serious violation of federal and state regulations governing workplace safety, specifically 29 CFR 1910.303(b)(1).

123.    The City, and DPW specifically, required employees to operate the two overhead cranes at the Grit

29

Facility where hydrogen sulfide, a highly flammable and extremely toxic gas, was detected and the cranes were not approved for hazardous areas.

124.    The City, and DPW specifically, required employees in the Grit Facility to operate electrical equipment - chamber gate motors, wiring, receptacles, disconnects and light fixtures - which was damaged and corroded, which compromised the equipment's approval for hazardous locations.

125.    The City, and DPW specifically, required employees in the Grit Facility to operate electrical equipment where elevated levels of hydrogen sulfide, a highly flammable and extremely toxic gas, existed.

126.    MOSH found the operation of equipment not approved for hazardous locations and the operation of equipment so damaged and corroded as to void any approval to operate in hazardous locations to be a serious violation of federal and state regulations governing workplace safety, specifically 29 CFR 1910.307(c).

127.    The City, and DPW specifically, exposed employees to recognized hazards that were likely to cause death or serious physical harm to the employees by requiring employees to operate cranes in the Grit Facility without the employees having successfully completed a written and practical exam.

30

128.   MOSH found that exposing employees to recognized hazards without successful completion of a written or practical exam to be a serious violation of federal and state regulations governing workplace safety, specifically Md. Code, LE, s. 5-104(a).

129.   The City, and DPW specifically, exposed employees in the Grit Facility to inhalation, fire, and explosion hazards from atmospheric gases such as hydrogen sulfide, methane and carbon dioxide, as the ventilation system was inoperable, electrical equipment was damaged, atmospheric building gas sensors were broken and operating procedures were not followed.

130.   MOSH found that exposing employees to toxic atmospheric gases without proper ventilation, with damaged electrical equipment, with broken gas sensors and where facility operating procedures were not followed was a serious violation of federal and state regulations governing workplace safety, specifically Md. Code, LE, s. 5-104(a).

131.   The City, and DPW specifically, maintained the Grit Facility with a ladder that had a missing rung at the bottom and that the ladder had not been inspected.

132.   MOSH found that the ladder missing a rung and the failure to inspect the ladder to be a violation of federal and state regulations governing workplace safety, specifically 29 CFR 1910.23(b)(9).

31

133. The City, and DPW specifically, maintained a platform adjacent to Grit Chamber 6 with bent and broken guardrails which caused the guardrails not to be smooth in multiple places. This condition also existed in platforms adjacent to Grit Chamber 5.

134. MOSH found the bent and broken guardrail to be a violation of federal and state regulations governing workplace safety, specifically 29 CFR 1910.29(b)(6).

135. The Grit Facility had been equipped with four gas loggers, an electronic tool designed to report elevated levels of hydrogen sulfide. Three of the four gas loggers were not operational.

136. When the loggers are properly working and gas levels are reported as elevated, a chemical is released to bring the level of hydrogen sulfide down.

137. This notification of the elevated levels of hydrogen sulfide was transmitted to an off-site location away from PWWTP.

138. PWWTP was never alerted and did not use these loggers, or any other method, for the monitoring of elevated levels of hydrogen sulfide.

139. Air handling and exhaust units in the Grit Facility were inoperable and out of service. All of these units were fully corroded and deteriorated.

32

140.     The City, and DPW specifically, were aware that the air handling and exhaust units in the Grit Facility were inoperable and out of service. In fact, the standard operating procedure (notwithstanding the fact that employees who worked in this area were never alerted to the existence of standard operating procedures) regarding ventilation, was to leave doors open.

141.     The elevated levels of hydrogen sulfide contributed to the corrosion of the grates and the clips that were needed to assure Trina L. Cunningham's safety and prevent her from falling through the grate.

142.     The elevated levels of hydrogen sulfide also contributed to the corrosion of the electrical equipment inside the Grit Facility.

143.     Inspectors from MOSH tested the crane's braking ability, after Trina L. Cunningham's death, but prior to the Grit Facility re-opening, and found that the entire crane, block and clamshell moved an additional five feet after braking.

144.     MOSH inspectors also observed severe corrosion and damage to electrical equipment, including grounding wires, electrical conduits and electrical boxes.

145.     The inspectors also noted that all explosion proof equipment was in poor condition.

146.    The City, and DPW specifically, failed to provide appropriate training and instructions for the hazards of the work being done at the Grit Facility.

147.    The City, and DPW specifically, failed to provide hazard prevention and control.

148.    The City, and DPW specifically, did not perform inspections of the hooks that are attached to the clamshells suspended below the hook and running ropes, nor are records kept as required for the hook inspections.

149.    The hooks are subjected to the loads imposed by the clamshells, the grit they pick up and to the hydrogen sulfide which caused visible damage to other equipment in the Grit Facility.

150.    The capacity of each of the two overhead cranes was 10-tons but the capacity of each of the hooks was 7.5 tons.

151.    Both the clamshells and the hooks are in contact, or almost in contact, with the wastewater when removing the grit from the chambers, which could result in corrosion of the hooks without frequent inspections.

152.    The City, and DPW specifically, did not perform wire rope inspections of the running ropes on the block that suspends the hooks that hold the clamshells suspended below the hook and lines, nor are records kept as required for the inspections.

34

153.    The running ropes are subjected to the loads imposed by the clamshells and the grit they pick up and to the hydrogen sulfide which has caused visible damage to other equipment in the Grit Facility.

154.    The wire ropes were observed to be corroded from the exposure to the hydrogen sulfide.

155.    Employees operate the cranes approximately 2-3 times a month for approximately 3 hours a day when they are used.

156.    Employees operated two overhead cranes to remove wastewater debris from grit chambers where elevated levels of hydrogen sulfide, a flammable gas, was detected and the cranes were not approved for use in hazardous locations.

157.    Employees operated electrical equipment including, but not limited to, chamber gate motors, wiring, receptacles, disconnects, and light fixtures which were damaged and corroded as to void their approval for hazardous locations, and where elevated levels of hydrogen sulfide, a flammable gas, were detected.

158.    The City, and DPW specifically, had employees working in a facility where hydrogen sulfide was present in varying levels. The employees were operating overhead cranes to remove grit from multiple tanks. The wastewater in the tanks was the cause of the hydrogen sulfide.

35

159.    A receptacle that was operating at 120-volts was found to have its cover unsecured and suspended by the wiring, leaving the wiring exposed and not being intrinsically safe in a category 2 atmosphere, as defined by MOSH

160.    Failure to ensure all electrical equipment operating in hazardous locations is approved for the location could lead to an ignition of flammable vapors. Employees could suffer thermal burns as a result of a fire from the flammable vapors reaching the electrical ignition source.

161.    Exposure of the unprotected wiring to the hydrogen sulfide could result in damaged wiring, damaged wiring could cause the wiring to short out or arc flash resulting in serious injury or death to exposed employees working in the Grit Facility.

162.    The cranes in the Grit Facility were not intrinsically safe as a cover plate was exposed the wiring to hydrogen sulfide.

163.    The City, and DPW specifically, failed to ensure employees had acquired the knowledge and skill necessary, through training, to operate the cranes in the Grit Facility in accordance with state and federal provisions.

164.    The City, and DPW specifically, had no manner of acceptable training on operating the cranes inside the Grit

36

Facility as required by American National Standards Institute ("ANSI").

165.    The City, and DPW specifically, were aware, or should have been aware, that failure to properly train and assess employee knowledge on crane operations could lead to employees losing control of the crane which could lead to either employees, material or equipment being struck by the crane.

166.    The City, and DPW specifically, failed to provide employees of the Grit Facility with gas meters and failed to train employees in the proper usage of the meters that were maintained in the Grit Facility.

167.    Employees in the Grit Facility were not following standard operating procedures (because they were unaware of the existence of standard operating procedures) that required two employees with two gas meters to be together in the facility.

168.    The existence of Standard Operating Procedures indicates the City, and DPW specifically, were aware of the need for safeguards.

169.    Because none of the employees present on June 3, 2019, had been trained on, nor were aware of, the SOP indicates the City, and DPW specifically, intentionally or negligently withheld the dangers inherent within the PWWTP, Grit Facility.

170.    The City, and DPW specifically, oversaw employees removing grit from the Grit Facility that had visible uneven

37

guardrails which had existed in this state of disrepair for over a year.

171.    The City, and DPW specifically, through its employees and officials, were fully aware of federal regulations, the MOSH violations and the dangerous condition of the Grit Facility.

172.    At all times relevant to this action, the City Defendants were acting under color of law under their authority as City employees, and under color of the statutes, ordinances, regulations of the City of Baltimore and the policies, customs and usage of DPW.  Specifically, at the time of Trina L. Cunningham's death the City Defendants:

> a. used the resources of the City and the DPW; and,
>
> b. were on active duty as officers of the City and/or DPW.

173.    As administrative officials and employees of the City and DPW, the City Employee defendants provided deliberately indifferent training to employees of the Grit Facility and further provided deliberately indifferent supervision and discipline.  The City Employee defendants were further deliberately indifferent towards safety standards and maintenance of machines and equipment and were further deliberately indifferent in failing to adopt policies necessary

38

to prevent violations of the plaintiff's rights under the Maryland Declaration of Rights and U.S. Constitution. Their actions or inactions were moving forces in and had a direct causal link to the injuries to plaintiff.

174.  The City Employees, and their subordinates and designees were responsible for the operation and implementation of the policies pertinent to the DPW as promulgated by the City and DPW.

175.  The City Defendants were responsible for promulgating and implementing and following policies and procedures pertinent to the DPW and specifically, and not limited to, the safety and well-being of the employees, including Trina L. Cunningham.

176.  All of these duties were to be civilly and constitutionally fulfilled to assure the safety and well-being of all employees entrusted to the City Defendants.

## IV.  CLAIMS FOR RELIEF

### First Claim for Relief
### 42 U.S.C. 1983
### U.S. Const. 14th Amend. — State Created Danger
### Maryland Declaration of Rights
(Plaintiff Estate of Trina L. Cunningham Against City Defendants (Defendants identified in paragraphs 9-20))

177.  Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

39

178.    City Defendants violated Trina L. Cunningham's due process right to bodily integrity, which is secured by the Fourteenth Amendment to the Constitution of the United States.

179.    At all times material hereto, City Defendants acted under color of law.

180.    The specific harm to which City Defendants exposed Trina L. Cunningham was foreseeable and direct in that the City Defendants required employees to work in an extremely dangerous environment without proper safeguards, training, inspection, or maintenance.

181.    The City Defendants' willful decision to remove all safety precautions from the Grit Facility created a degree of culpability that shocks the conscience because the City Defendants directed Trina L. Cunningham to work in a facility that the City Defendants failed to abate numerous known and foreseeable dangers or take any precautions to prevent death or serious bodily injury which meant that eventually an employee would die in the Grit Facility or be seriously injured.

182.    The City Defendants' custom of allowing employees to work in a dangerous environment without any adequate safety measures is contrary to the rules and regulations of the City, State of Maryland, Maryland Occupational Safety and Health and the Occupational Safety and Health Administration.

40

183.    Trina L. Cunningham, as an untrained or
improperly trained employee of DPW, working in a hazardous,
improperly maintained environment, was a member of a discrete
class of person(s) subjected to the potential harm brought about
by the City Defendants.

184.    As a member of this class, Trina L. Cunningham
held a special relationship with the City Defendants as she was
an untrained or improperly trained employee of DPW, working in a
hazardous, improperly maintained environment who was ordered to
work inside the Grit Facility.

185.    The City Defendants affirmatively removed any and
all safety measures for employees within the Grit Facility in a
way that created a danger to Trina L. Cunningham.

186.    The City Defendant's actions constitute a "state-
created danger," rendering them liable to Trina L. Cunningham
for violation of her civil rights.

187.    Despite their awareness of the risk of loose
grates, missing clips, corrosion, cranes striking the grates,
and other dangerous elements within the Grit Facility discussed
herein, the City Defendants deliberately chose not repair or
properly maintain the Grit Facility or to train their employees
and/or agents regarding policies for proper use of the Grit
Facility, operation of the cranes and mechanism therein, and/or

41

necessary safety precautions, or acquiesced in a longstanding practice or custom of inaction in this regard.

188.    Despite their awareness of the risk of loose grates, missing clips, corrosion, cranes striking the grates, and other dangerous elements within the Grit Facility discussed herein, the City Defendants deliberately chose not to inform or train their employees and/or agents regarding safety policies or acquiesced in a longstanding practice or custom of inaction in this regard.

189.    The Constitutional rights violated by the City Defendants consisted of liberty, privacy, and bodily integrity.

190.    The City Defendants acted intentionally or with deliberate indifference to the rights of Trina L. Cunningham.

191.    As a direct result of the actions of the City Defendants as set forth above, Trina L. Cunningham died from drowning in an eighteen feet deep chamber of wastewater, urine and feces.

192.    The acts or omissions of all individual City Defendants were direct causes of and moving forces behind Plaintiff's injuries.

193.    The City Defendants to this claim at all times relevant hereto were acting pursuant to Baltimore City and DPW custom, policy, decision, ordinance, regulation, widespread

42

habit, usage, or practice in their actions pertaining to Trina L. Cunningham.

194.     Defendants are not entitled to qualified immunity for the complained of conduct because they were fully aware of Trina L. Cunningham's right to bodily integrity and liberty.

195.     As a proximate result of the City Defendants' unlawful conduct, Trina L. Cunningham has suffered death, great physical and emotional injuries, and other damages and losses as described herein entitling her estate to compensatory and special damages.

196.     In addition to compensatory, economic, consequential, and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants, in that the actions of each of these individual Defendants were taken knowingly, intentionally, maliciously, willfully or with a reckless or wanton disregard of Trina L. Cunningham's rights under the U.S. Constitution.

### Second Claim for Relief
### 42 U.S.C. 1983 – Monell Claim
(Plaintiff Estate of Trina L. Cunningham Against City Defendants (Defendants identified in paragraphs 9-20))

197.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as fully set forth herein.

198.     The City Employees were employees of the City on the date of the incident.

43

199.    The City failed to train and supervise their employees in the proper use and function of the Grit Facility and its equipment.

200.    The City, through DPW, maintains informal and formal customs, policies and practice that promote and encourage DPW employees to fail to adequately and properly use and maintain the equipment inside of the Grit Facility.

201.    The failure to train is so persistent and widespread that it has become an accepted manner or custom.

202.    The City Employee defendants had knowledge of the custom and practices of failing to train in violation of the Fourteenth Amendment. Defendant City Employee's actions described in this Complaint were the direct result of orders given by DPW and its supervisors and management.

203.    The City Employees instituted and established a culture of lack of training and supervision. These unwritten and informal policies were moving forces behind the dangers that led to Trina L. Cunningham's death.

204.    The City had actual knowledge or constructive knowledge of the lack of any training program.

205.    The City Employees deliberately ignored, and at times, encouraged workers to perform tasks in the Grit Facility without proper training or supervision.

206.    The City deliberately ignored the environment

44

of lack of training and supervision maintained in the Grit Facility, and thus, failed to put a stop to or correct the widespread pattern of negligence and incompetence in the use of the equipment in the Grit Facility.

207.    The City Employees had knowledge of the lack of adequate training and supervision but took no action or inadequate action to correct this deficiency.

208.    The City Employee's failure to take action constituted deliberate indifference to the rights of Trina L. Cunningham and DPW workers, because the City Employees were aware of the harm she was subjected to, aware that the harm would continue if they took no action and decided to take no action.

209.    Although Defendants City Employees and the City knew or should have known of the customs of failing to train and supervise, the City and the City Employees failed to supervise and train the workers in the Grit Facility.

210.    The acts and omissions of the City and the City Employees were direct and proximate causes of Trina L. Cunningham's death. The failure to properly hire, train, retain and supervise the employees inside the Grit Facility was a direct and proximate cause of Trina L. Cunningham's death.

45

**Third Claim for Relief**
**STRICT PRODUCTS LIABILITY**
(Plaintiff Estate of Trina L. Cunningham
Against all Crane Defendants
(Defendants identified in paragraphs 21-34))

211.   Plaintiffs   hereby   incorporate   all   other
paragraphs of this Complaint as fully set forth herein.

212.   The "crane system" consists of the clamshell
buckets, the reels, the cables, the hoists, the remote-
control system, the motors, the hooks, the braking system,
I-beam and other parts of the mechanical lifting device
used to remove debris from the Grit Facility chambers.

213.   The   crane   system   in   the   Grit   Facility
malfunctioned and struck the grates above the grit chambers
and thereby loosened the grates above the grit chamber that
Trina L. Cunningham fell into and drowned.

214.   The Crane Defendants designed, constructed
and manufactured the crane system in the Grit Facility and
did so in a defective manner and thus rendered the grates,
walking   surfaces   above   chambers,   and   indeed   the   Grit
Facility, inherently dangerous and created an unreasonable
risk of serious injury or death to the employees of the
Grit Facility.

215.   The Crane Defendants placed the crane system
into the stream of commerce in a defective and unreasonably
dangerous condition.

46

216.   There was no substantial change in the crane system at the time of Trina L. Cunningham's death.

217.   The Crane Defendants manufactured, assembled, marketed, distributed and sold the crane system with the design and manufacturing defects.

218.   The Crane Defendants are strictly liable in tort for Trina L. Cunningham's injuries and death.

219.   As a direct and proximate cause of the design and manufacturing defects in the crane system, Trina L. Cunningham was killed.   If the crane system had not contained the design and manufacturing defects, Trina L. Cunningham would not have fallen into the grit chamber and drowned.

**Fourth Claim for Relief**
**STRICT PRODUCTS LIABILITY**
(Plaintiff Estate of Trina L. Cunningham
Against all Grate Defendants
(Defendants identified in paragraphs 35-38))

220.   Plaintiffs hereby incorporate all other paragraphs of this Complaint as fully set forth herein.

221.   The Grate Defendants designed, constructed and manufactured the grates, clips and walking surfaces in the Grit Facility and did so in a defective manner and thus rendered the grates, walking surfaces above chambers, and indeed the Grit Facility, inherently dangerous and created an unreasonable risk of serious injury or death to the

employees of the Grit Facility.

222.    The Grate defendants designed the grate
system with a zero error-rate margin.  Stated differently,
the grate system was designed such that any malfunction
which caused a fall into the aerated grit chamber would
result in death.

**223.**    The Grate Defendants placed the grates and
clips and I-beams into the stream of commerce in a
defective and unreasonably dangerous condition.

224.    There was no substantial change to the
grates, clips and I-beams at the time of Trina L.
Cunningham's death.

225.    The    Grate    Defendants    manufactured,
assembled, marketed, distributed and sold the grates, clips
and I-beams with the design and manufacturing defects.

226.    The Grate Defendants are strictly liable in
tort for Trina L. Cunningham's injuries and death.

227.    As a direct and proximate cause of the
design and manufacturing defects in the grates, clips and
I-beams, Trina L. Cunningham was killed.  If the grates,
clips and/or I-beams had not contained the design and
manufacturing defects, Trina L. Cunningham would not have
fallen into the aerated grit chamber and drowned.

48

**Fifth Claim for Relief**
**NEGLIGENCE**
(Plaintiff Estate of Trina L. Cunningham
Against all Grate Defendants
(Defendants identified in paragraphs 35-38))

228.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as fully set forth herein.

229.    At all times relevant, the Grate Defendants had a duty to design and manufacture grates, clips and I-beams in a proper fashion and/or to exercise the degree of care that reasonable manufacturers should use in designing and manufacturing grates, clips and I-beams.

230.    Notwithstanding this duty, the Grate Defendants negligently and carelessly designed and manufactured the grates, clips and I-beams.

231.    The Grate Defendants' negligence proximately caused Trina L. Cunningham to fall through the grate and drown in the aerated grit chamber.

**Sixth Claim for Relief**
**NEGLIGENCE**
(Plaintiff Estate of Trina L. Cunningham
Against all Crane Defendants
(Defendants identified in paragraphs 21-34))

232.    Plaintiff hereby incorporates all other paragraphs of this Complaint as fully set forth herein.

233.    At all times relevant, the Crane Defendants had a duty to design and manufacture the crane system in a proper fashion and/or to exercise the degree of care that reasonable

49

manufacturers should use in designing and manufacturing crane systems.

234.    Notwithstanding this duty, the Crane Defendants negligently and carelessly designed and manufactured the crane system.

235.    The Crane Defendants' negligence proximately caused Trina L. Cunningham to fall through the grate and drown in the aerated grit chamber.

### Seventh Claim for Relief
### NEGLIGENCE
(Plaintiff Estate of Trina L. Cunningham Against Crane 1 Services, Inc., Gannett Fleming, LLC, Freeland Hoist & Crane, Inc. and Overhead Crane Service, Inc.)

236.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as fully set forth herein.

237.    At all times relevant, the Crane 1 Services, Inc., Gannett Fleming, LLC, Freeland Hoist & Crane, Inc. and Overhead Crane Service, Inc., had a duty to consult with the Mayor and City Council of Baltimore in a proper fashion and/or to exercise the degree of care that reasonable consultants should use in assuring that the Grit Facility and the equipment therein which was certified as safe were in fact safe.

238.    Notwithstanding this duty, Crane 1 Services, Inc., Gannett Fleming, LLC, Freeland Hoist & Crane, Inc., and Overhead Crane Service, Inc., negligently and carelessly certified that the Grit Facility and the equipment therein was

50

safe.

239.     The negligence of Crane 1 Services, Inc., Gannett Fleming, LLC, Freeland Hoist & Crane, Inc., and Overhead Crane Service, Inc. proximately caused Trina L. Cunningham to fall through the grate and drown in the aerated grit chamber.

### Eighth Claim for Relief
#### SURVIVAL ACTION
(Plaintiff Estate of Trina L. Cunningham Against all Defendants)

240.     Plaintiffs hereby incorporate all other paragraphs of this Complaint as fully set forth herein.

241.     The defendants owed Trina L. Cunningham a duty to use reasonable care to provide her with a safe work environment and prevent her from drowning in the Grit Facility.

242.     By failing to properly design and manufacture the crane system, and failing to properly design and manufacture the grates, clips and I-beams and by failing to maintain a safe and secure facility, these defendants breached the duties owed to Trina L. Cunningham, and thereby caused her to fall through the grates and into the aerated grit chamber and drown.

243.     Although Trina L. Cunningham survived the fall, she was conscious and living while in the aerated grit chamber drowning in wastewater, urine and feces.

244.     As a direct and proximate result of the

51

defendants' actions, Trina L. Cunningham sustained severe conscious pain and suffering between the time in which she fell into the chamber and the time of her death.

### Ninth Claim for Relief
### WRONGFUL DEATH
(Plaintiff Estate of Trina L. Cunningham Against all Defendants)

245.    Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

246.    TOWANDA GRANT-CUNNINGHAM is the primary beneficiary in this action pursuant to § 3-904(a) of the Courts and Judicial Proceedings Article.

247.    By failing to properly design and manufacture the crane system, and failing to properly design and manufacture the grates, clips and I-beams and by failing to maintain a safe and secure facility, these defendants breached the duties owed to Trina L. Cunningham, and thereby caused her to fall through the grates and into the aerated grit chamber and drown.

248.    By failing to exercise reasonable care, the Defendants breached their duties of care.

249.    As a direct and proximate result of the Defendants breaches of duty, and for which Trina L. Cunningham would have been able to maintain an action against the Defendants and recover damages had she lived, Trina L. Cunningham sustained fatal injuries and was pronounced dead on June 3, 2019, at the Grit Facility.

52

250.     As a direct and proximate result of Defendants'
negligence in causing Trina L. Cunningham's death, Towanda
Grant-Cunningham, surviving widow, Faith Cunningham, mother of
decedent, and Brock Birden, son of decedent, sustained pecuniary
loss, mental anguish, emotional pain and suffering, loss of
society, loss of companionship, loss of comfort, loss of
protection, loss of marital care, loss of parental care, loss of
filial care, loss of attention, loss of advice, loss of counsel,
loss of training, loss of guidance and loss of education.

251.     This complaint is timely filed within three years
after the death of Trina L. Cunningham pursuant to § 3-904(g) of
the Courts and Judicial Proceedings Article of the Maryland Code
Annotated.

### Tenth Claim for Relief
### LOSS OF CONSORTIUM
(Plaintiffs Towanda Grant-Cunningham and Plaintiff Estate of
Trina L. Cunningham Against all Defendants)

252.     Plaintiffs hereby incorporate all other
paragraphs of this Complaint as if fully set forth herein.

253.     At the time of Trina L. Cunningham's death, she
was married to Towanda Grant-Cunningham.

254.     The conduct of each defendant, more specifically
described throughout the complaint, caused injury to the marital
relationship of Towanda Grant-Cunningham and Trina L.

53

Cunningham, including loss of society, affection, assistance, companionship and sexual relations.

## V.  RELIEF REQUESTED

Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.  Wherefore, Plaintiffs hereby pray for and seek from the Defendants, jointly and severally, the following relief:

> 1) pecuniary damages necessitated by Defendants' acts;
>
> 2) compensatory damages in the amount of $100,000,000.00;
>
> 3) punitive damages in the amount of $250,000,000.00 for each defendant, for which all other facts set forth in this Complaint will be used as evidence to prove;
>
> 4) attorney's fees; and
>
> 6) any other relief which this Court decides is necessary in the interest of justice.

## VI.  JURY DEMAND

Plaintiff respectfully demands a jury trial in this matter.

Respectfully submitted,

_____
ROLAND D. BROOKS, Esq. 96775
200 E. Lexington Street,1111
Baltimore, MD 21202
Phone:410-528-9751
Fax:  410-528-9754
rdbalaw@gmail.com
0712110097

54

RANDY EVAN MCDONALD, Esq.
1001 L Street, SE
Washington, DC 20003
Telephone: (240)491-7609
randyemcdonald@gmail.com
Counsel for the Plaintiffs