

FRANKLIN & PROKOPIK
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

The B&O Building
2 N. Charles Street, Suite 600
Baltimore, MD 21201
410.752.8700
410.752.6868 Fax
www.fandpnet.com

SCOTT H. PHILLIPS
DIRECT DIAL 410.230.3576
SPHILLIPS@FANDPNET.COM
ADMITTED IN MD AND DC

March 23, 2022

**VIA CM/ECF**
The Honorable Lydia Kay Griggsby
U.S. District Court for the District of Maryland
101 W. Lombard Street, Chambers 5C
Baltimore, Maryland 21201

Re: *Estate of Trina L. Cunningham, et al. v. Mayor and City Council of Baltimore, et al.*
**Civil Action No. 1:22-cv-141-LKG**

Dear Judge Griggsby:

Defendants Columbus McKinnon Corp., Magnetek, Inc., Electromotive Systems, Inc., and Seivert Electric Service and Sales Company, Budgit Hoist (collectively "CMCO Defendants"), pursuant to the ¶II.A.2 of the Case Management Order [Doc. 107], hereby advise the Court of their intention to move for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). Counsel for the CMCO Defendants requested that Plaintiff discontinue the action based upon the lack of actionable allegations against the CMCO Defendants, but the parties were unable to reach an agreement that would obviate the need to file a dispositive motion.

I.   The Legal Standard: Rule 12(c)

Under Rule 12(c), a party may move for judgment on the pleadings after the pleadings are closed. As the CMCO Defendants have answered the Complaint, the pleadings are closed. See Fed. R. Civ. Proc. 7(a).

A Rule 12(c) motion is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A motion under Rule 12(c) tests the sufficiency of the Complaint; it does not resolve the merits of the plaintiff's claims or any disputes of fact. *Draver v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). In considering such a motion, the Court is not obliged to accept allegations that represent "unwarranted inferences, unreasonable conclusions, or arguments." *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006). The Court must consider the pleading requirements set forth in Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79.

To survive the CMCO Defendants' motion under Rule 12(c), the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The Complaint must set forth more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" and "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 555, 562, n.8 (emphasis in original) (quotation marks omitted).

To recover under a strict liability theory in a defective product case, the plaintiff must prove that the product was defective at the time it left the possession or control of the seller, the product was unreasonably dangerous to the user or consumer, the product was expected to and did reach the consumer without substantial change in its condition, and the defect was the cause of the injuries alleged. *Kelley v. R.G. Industries, Inc.*, 304 Md. 124 (1985). "[P]roof of a defect must arise above surmise, conjecture or speculation; and one's right to recovery may not rest on any presumption from the happening of an accident … The bare fact that an accident happens to a product … is usually not sufficient proof that it was in any way defective." *Virgil Kash N' Karry Serv. Corp.*, 484 A.2d 652, 657 (1984). The elements of a negligence action in the products liability context are essentially the same, except that the plaintiff must show a breach of duty owed to the plaintiff. *Polansky v. Rvobi America Corp.*, 760 F.Supp. 85, 87 (D.Md. 1991).

II.  Argument

As to the "Crane Defendants," including the CMCO Defendants, the Complaint alleges that the "crane system" consists of the clamshell buckets, the reels, the cables, the hoists, the remote-control system, the motors, the hooks, the braking system, I-beam and other parts of the mechanical lifting device used to remove debris from the grit chamber. Complaint, ¶212. Plaintiffs admit that the crane was not approved for use in the hazardous locations such as the grit facility and that the presence of toxic chemicals corroded both crane components and equipment intended to secure the failed catwalk, thereby causing the accident. *Id.* at ¶¶71, 82, 123-24, 126, 141. Plaintiffs fault the "City Defendants" for the accident, detailing numerous failures, including but not limited to, permitting multiple dangerous conditions to exist at the grit facility; failing to properly inspect and maintain the crane and catwalks in a toxic environment and otherwise; and failing to train employees in the proper use and operation of the crane and other equipment. *Id.* at ¶¶89-119.

The primary allegation against the "Crane Defendants" is that the crane system "malfunctioned" and struck the grates above the grit chambers, thereby loosening the grates where the decedent fell. *Id.* at ¶213. The Complaint asserts, in a vague and generic manner, that the "Crane Defendants" "designed, constructed and manufactured" the crane system in a defective manner and thus rendered the grates and walking surfaces above the chambers inherently dangerous and created an unreasonable risk of serious injury or death. *Id.* at ¶214.

Plaintiffs do not identify any specific part manufactured/sold by the CMCO Defendants. Nor do Plaintiffs allege a product defect or that any such defect caused the accident. In addition to the failure to identify a specific part, defect, or causal connection, the primary allegation – that

the crane struck the catwalk at some point prior to the accident – is impermissibly remote and speculative. Regardless, the Complaint does not allege how the crane malfunctioned, resulting in it striking the catwalk, nor does it allege that the malfunction is attributable to the CMCO Defendants (or any specific defendant for that matter).

Further, the Complaint does not articulate how a crane malfunction caused the accident, independent of the various (and far more specific) theories of liability against the "City Defendants". In addition to the specific allegations against the "City Defendants" (described above), Plaintiffs only assert two allegations that could arguably be construed as alleging a product defect, neither of which relate to the CMCO Defendants. First, Plaintiffs allege that "G-Clips" were defectively manufactured and/or designed to secure the grate to the I-beam. *Id.* at ¶¶221-31. Second, Plaintiffs allege the crane brakes malfunctioned based upon MOSH testing that demonstrated the crane moved an additional five feet after braking. *Id.* at ¶143. In addition to failing to allege proximate causation as to these allegations, Plaintiffs do not, and cannot, allege that the CMCO Defendants manufactured the "G-Clips" or the crane brakes.

Finally, the Complaint refers to, incorporates, and apparently relies solely upon a Maryland Occupational Safety and Health Report (the "MOSH Report") for the vague allegations against the Crane Defendants; consequently, the MOSH Report is properly considered in a motion on the pleadings. Importantly, while the MOSH Report found that a single support beam sustained damage that may have been related to being struck by the overhead crane, there was no specific finding that this beam was located in the area where the accident occurred or, even if it was, that it in any way caused the accident. Further, while the MOSH Report did address the crane braking system, it did not criticize any component that was or could have been manufactured by the CMCO Defendants.

Simply put, it is clear that Plaintiffs simply named every crane component manufacturer they could identify without a good faith basis to believe a defect existed in each respective part at the time of manufacture and sale that caused the accident. There are zero specific allegations concerning any product purportedly manufactured/sold by the CMCO Defendants, and the Complaint is properly dismissed.

Very truly yours,

Scott H. Phillips

SHP/
Cc: All counsel of record